UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                    Case No. 11-20178
                                                      Honorable Patrick J. Duggan

DARRELL EWING,

      Defendant.

_____/

**OPINION AND ORDER (1) DENYING PETITIONER'S MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28
U.S.C. § 2255, (2) DENYING AN EVIDENTIARY HEARING, AND (3)
GRANTING IN PART A CERTIFICATE OF APPEALABILITY**

On March 19, 2014, Petitioner Darrell Ewing filed a motion under 28 U.S.C.

§ 2255 to vacate, set aside, or correct his sentence. Serving a 180-month sentence

of imprisonment pursuant to a plea-based conviction for violating federal drug

laws, Ewing raises three challenges to the length of his sentence. Specifically,

Ewing argues that he was denied the effective assistance of counsel at the plea-

bargaining stage when his attorney provided him with erroneous advice regarding

his potential sentence exposure and because his attorney misinformed him about

his ability to obtain custody credit (i.e., credit for "time-served") towards his

federal sentence for the time Ewing spent in federal custody. In addition to the

ineffective assistance of counsel claims, Ewing also contends that he was denied

due process and equal protection by virtue of the Government's alleged breach of the plea agreement. Ewing seeks specific performance of the plea agreement, or, at minimum, asks this Court to hold an evidentiary hearing to establish the factual predicates of his constitutional claims. For the reasons set forth herein, the Court declines to grant an evidentiary hearing and denies Ewing's § 2255 motion but grants a certificate of appealability in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plea Agreement

On November 5, 2012, Ewing pleaded guilty to one count of controlled substance conspiracy, in violation of 21 U.S.C. § 846. (Plea Ag., ECF No. 217.) The terms of the plea were set forth in a written Rule 11(c)(1)(C) plea agreement.[1]

Despite an actual sentencing guidelines range of 210 to 240 months calculated by the Probation Department and accepted by the parties and the Court, the operative plea agreement provided for a lower sentencing range. Specifically, Ewing and the Government agreed on a sentencing range of 144 to 204 months and

---

[1] Federal Rule of Criminal Procedure 11(c)(1)(C) provides, in pertinent part:

If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offence, the plea agreement may specify that an attorney for the government will: . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such recommendation or request binds the court once the court accepts the plea agreement).

2

further agreed that if the Court sentenced Ewing outside of this range, the

dissatisfied party could withdraw from the plea agreement.  At the November 5,

2012 plea hearing, the Court confirmed that this was Ewing's understanding of the

sentencing range:

> THE COURT:  . . . [The agreement] indicates that the Government
> and defendant agree the sentence of imprisonment may be between
> 144 to 204 months, is that your understanding of the agreement?

> THE DEFENDANT:  Yes, sir.

(Plea Hrg. Tr. 8, ECF No. 276.)  The Court then inquired as to the existence of any

other agreements:

> THE COURT:  Is there any other agreement made with anyone to
> persuade you to plead guilty?

> THE DEFENDANT:  No.

> THE COURT:  Have you made any other agreement besides this one?

> THE DEFENDANT:  No, sir.

> …

> THE COURT:  You understand if I accept this plea[,] I'm going to
> refer the matter to the probation department for a presentence report?

> THE DEFENDANT:  Yes, Your Honor.

> THE COURT:  And based on the information in that report, other
> information you or your lawyer can give me, I'll then decide what I
> think to be the proper sentence?

> THE DEFENDANT:  Yes, Your Honor.

(*Id.* at 8-9.)  After a series of questions ensuring that Ewing reviewed the agreement with counsel, understood the terms of the plea, and that he was not coerced into pleading guilty, the Court accepted Ewing's guilty plea.  (*Id.* at 11.)

**B.    Sentencing**

Ewing returned to the Court for sentencing on January 28, 2013.  Upon the Government's recommendation, the Court sentenced Ewing to 180 months of imprisonment, which is plainly within the agreed-upon sentencing range of 144 to 204 months.

Leading up to the imposition of the sentence, Ewing's attorney, Marlon Evans, began making representations in open court that Ewing was under the impression that the Government was going to recommend a sentence of 144 months, not 180 months.  (Sent'g Hrg. Tr. 8, 16, 19, ECF No. 277.)  The Court proceeded to inquire as to whether the prosecuting attorney, Mark Chasteen, did indeed make such a commitment, which, according to Ewing's attorney, was made orally in the courtroom prior to the plea colloquy.  (*Id.* at 20-22.)  Although somewhat equivocal, the prosecutor denied committing to a specific number and provided a host of explanations for why he would not have done so.  (*Id.* at 19-26.)  After Ewing's attorney confirmed that there was nothing in the record or in writing to support his client's belief that the Government had committed to recommend a 144-month sentence, the Court reminded the parties that the

4

Government's recommendation within the agreed-upon sentencing range was not binding on the Court.  (*Id.* at 25-26.)

During his allocution, Ewing wanted "to state, on the record," that he was "induced to take this plea by [the Prosecutor's] promise of 12 years.  And if that's not what he's standing on today as a man, as his word, that he gave me and my lawyer, then I would like to withdraw my plea today."  (*Id.* at 33-34.)  The Court denied Ewing's oral motion to set aside his plea and, in accordance with the Government's recommendation, proceeded to sentence Ewing to a 180-month term of imprisonment to run concurrently with a life sentence for murder that Ewing was already serving in the Michigan Department of Corrections.  (*Id.* at 34, 36.)

## C.    Appeal

Ewing filed a timely notice of appeal on January 31, 2013.  Among Ewing's claims was that this Court erred in denying his oral motion to withdraw his plea. (*See* Ewing App. Br. attach. Gov't's Resp. Ex. B; *see also* Ewing App. Resp. attach. Gov't's Resp. Ex. C.)  Ewing argued that he only agreed to the plea agreement because he was under the impression that the Government would recommend a 144-month sentence.  Notably, Ewing did not claim on appeal that custody credit played any role in his decision to plead guilty.

The Government moved to dismiss the appeal on the basis that the plea agreement contained an appellate waiver provision.  In an order dated November

5

26, 2013, the United States Court of Appeals for the Sixth Circuit granted the

Government's motion. *United States v. Ewing*, No. 13-1157 (6th Cir. Nov. 26,

2013) (slip op.). The Sixth Circuit provided the following explanation for rejecting

Ewing's claim of error:

> Ewing's assertion that he only entered the plea based on his understanding that he would be sentenced to 144 months of imprisonment has no support in the record. He was informed at his hearing regarding the range within which he could be sentenced, he agreed that this was his potential range, and he stated that there were no other outside agreements. His written plea included an integration clause establishing that there were no other outside agreements. Ewing's subjective belief that the government would recommend the lowest possible sentence is not a basis for finding his plea unknowing, particularly when he was informed that his ultimate sentence was within the discretion of the district court.

*Id.* at 2-3.

**D.      Section 2255 Motion**

Ewing timely filed the instant § 2255 motion on March 19, 2014. (ECF No.

358.) The Government filed its response on May 12, 2014. (ECF No. 362.)

## II.      LEGAL STANDARD

**A.      Section 2255**

A prisoner is entitled to relief under § 2255 "[i]f the court finds that the

judgment was rendered without jurisdiction, or that the sentence imposed was not

authorized by law or otherwise open to collateral attack, or that there has been such

a denial or infringement of the constitutional rights of the prisoner as to render the

judgment vulnerable to collateral attack." 28 U.S.C. § 2255(a). To prevail on a

§ 2255 motion alleging constitutional error in connection with a guilty plea, a

prisoner "must demonstrate the existence of an error of constitutional magnitude

which had a substantial and injurious effect or influence on the guilty plea[.]"

*Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v.*

*Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22 (1993)). "Relief is

warranted only where a [prisoner] has shown 'a fundamental defect which

inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v.*

*United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305 (1974)). In order to prevail

on a § 2255 motion alleging non-constitutional error, a prisoner must show a

"fundamental defect in the proceedings which necessarily results in a complete

miscarriage of justice or an egregious error violative of due process." *Riggs v.*

*United States*, 209 F.3d 828, 831 (6th Cir. 2000).

A prisoner seeking relief pursuant to § 2255 bears the burden of establishing

the claims asserted in his motion. *Pough v. United States*, 442 F.3d 959, 964 (6th

Cir. 2006). "It is a 'well-settled principle that to obtain collateral review relief a

prisoner must clear a significantly higher hurdle than would exist on direct

appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United*

*States v. Frandy*, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593 (1982)).

**B.    Evidentiary Hearing**

7

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'"  *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).  Although no hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), and a "full blown evidentiary hearing" is not required in every case, *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)), "[w]here there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims," *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999).

The Sixth Circuit has held that where a prisoner's "allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts,'" no hearing is necessary. *Arredondo v. United States*, 178 F.3d 778, 682 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).  However, when a prisoner presents affidavits containing "a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'" and the government offers nothing more than "contrary representations" as rebuttal, the prisoner is entitled to an evidentiary hearing.  *Valentine*, 488 F.3d at 334.

8

### III.   ANALYSIS

Ewing's § 2255 motion seeks relief on three grounds, two of which involve his counsel's alleged ineffective assistance.  Ewing contends that his counsel rendered ineffective assistance at the plea-bargaining stage by misrepresenting to Ewing that by pleading guilty, he would receive a sentence of 144 months and would receive credit towards his federal sentence for the time he was in federal custody.  Ewing's third claim is that the Government breached the plea agreement.

### A.   Ineffective Assistance of Counsel Claims

Criminal "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1384 (2012) (citations omitted).  It follows that criminal defendants are "entitled to the effective assistance of competent counsel[]" "[d]uring plea negotiations[.]  *Id.* (internal quotation marks and quotation omitted).  The effectiveness of counsel rests upon the now-familiar two-component performance and prejudice framework first articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  To prevail on such a claim, a prisoner must demonstrate (1) that his attorney's performance was deficient in that it fell below an objective standard of reasonableness and (2) that, but for the deficiency, the outcome of the proceedings would have been different.  *Id.* at 694, 104 S. Ct. at 2068.

The *Strickland* standard applies to guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985). "In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence." *Griffin*, 330 F.3d at 736. To demonstrate prejudice, the party seeking to establish ineffective assistance of counsel "must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384 (citation omitted); *see also Hill*, 474 U.S. at 59, 106 S. Ct. at 370 (explaining that the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"). In a case such as this involving a "claim that ineffective assistance led to the improvident acceptance of a guilty plea," the claimant must demonstrate "'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Lafler*, 132 S. Ct. at 1384-85 (quoting *Hill*, 474 U.S. at 59, 106 S. Ct. at 370) (alteration in original).

## 1.    *Ineffective Assistance Regarding Sentence Exposure Claim*

Ewing's first ineffective assistance argument involves his attorney's allegedly erroneous advice that if he accepted the guilty plea, he would receive a sentence of 144 months. It is true that defense counsel's failure to "provide professional guidance to a defendant regarding his sentence exposure prior to a

plea may constitute deficient assistance." *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003). However, it is equally true that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977). Thus, a prisoner faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral responses given in open court during a Rule 11 colloquy. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992); *see also Blackledge*, 431 U.S. at 73-74, 97 S. Ct. at 1629 ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."); *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (explaining that failing to hold defendants to their statements would "render[] the plea colloquy meaningless" and "condon[e] the practice by defendants of providing untruthful responses to questions during plea colloquies").

Ewing's claim of attorney error is belied by the record. The plea agreement itself does not contain any promise to recommend a specific sentence and includes an integration clause that specifically precludes any outside agreements, including oral ones. (Plea Ag. 8.) Ewing indicated that he had sufficiently discussed the terms of the plea agreement with counsel prior to the plea hearing and that he understood the terms contained therein. (Plea Hrg. Tr. 10.) Both the plea

11

agreement and the plea hearing transcript evidence Ewing's understanding that the Court could impose a sentence between 144 and 204 months. (Plea Ag. 5; Plea Hrg. Tr. 8.) During the plea colloquy, the Court informed Ewing of the maximum sentence he faced for the count to which he pled and apprised him that the Court retained the authority to impose a sentence it believed proper despite the existence of the agreement. (Plea Hrg. Tr. 3, 9.) Ewing acknowledged that he waived any right to appeal if the Court imposed a sentence within the range contemplated by the parties. (*Id.* at 10-11.)

It was not until the sentencing hearing that Ewing indicated that *the Government* verbally committed to recommend a sentence of 144 months during the plea negotiations.  Such a commitment appears nowhere in the record and Ewing's own statements during the plea hearing undermine the veracity of this assertion.  At no time during the plea hearing did either Ewing or his attorney mention a promise by the Government to recommend a sentence of 144 months. This is significant given that the Court specifically asked Ewing whether any other promises had been made to induce his plea and that Ewing responded in the negative not once, but twice. (Plea Hrg. Tr. 8-9.) Further, at the sentencing hearing, Ewing did not once mention that *his attorney* had made any representation as to the Court's inclination to impose a 144-month sentence, rather, as

12

demonstrated more fully below, Ewing repeatedly stated on the record that *the Government* promised 144 months.

    Although Ewing expressly indicated that there were no agreements regarding his plea and sentence other than those contained in the plea agreement itself, (*id.*), the sentencing hearing transcript does provide minimal corroboration that Ewing's counsel may have been under the impression that the Government agreed not to oppose a sentence at the low end of the agreed-upon guidelines range.  For instance, Ewing's attorney informed the Court that he and his client "spoke with the Prosecutor and he wasn't going to put it as part of the agreement, but he was not in disagreement with the low ends [sic] of the guidelines[.]" (Sent'g Hrg. Tr. 8, ECF No. 277; *see also id.* at 16 (referring to 144-month sentence and indicating that "my client had [the] understanding that that was going to be the recommendation the Government was going to give"); *id.* at 19 (defense counsel indicating that his client "believed there would be no objection to the low end of the guidelines").)  Later during the hearing, the following exchange occurred:

> THE COURT:  There was no agreement that it would be the 144?
>
> MR. EVANS:   There was no agreement in the Rule 11 but [the Prosecutor] stated no objection for us to argue - - he said he wanted to see after he got the presentence report if his opinion changed.  I haven't heard any change of an opinion as a result of the presentence report.

So I'm under the impression, at that point, Your Honor, that he has no objection to the low ends [sic] of the guidelines because there's been no circumstances that have change [sic] that would warrant his opinion different.

THE COURT:  Where did you get the impression that when you agreed to a 144 to 204 [range] that he was agreeing to [] 144?  He says now, he expressed to you no objection to you arguing for the low end of the guideline[s].

MR. EVANS:  Well, maybe - - Your Honor, based upon information that my client received while we were in court at the time we took the plea, I can't remember verbatim.  *He remembers the information, he says that it [was] communicated from Mr. Chasteen's mouth to our ears, that that's what he heard.*

THE COURT [(to the prosecutor)]: You don't recall making that?

MR. CHASTEEN:  I remember distinctly Mr. Evans and discussing what the range would be . . . I do not recall saying that I would recommend 12 years.  I do remember saying I would want to see what the presentence investigation report said.  And in fact, I would note that the presentence investigation report found additional criminal history that we did not know about or I did not know about, otherwise it would have been in our calculated sentencing guideline range, which it's not.

(*Id.* at 20-21 (emphasis supplied).)

Despite this minimal support, the record is full of references to a promise made by *the Government*.  Mr. Evans explained to the Court: "Your Honor, [my client] informs me this was verbal while we were in court we were discussing, he was sitting here at this table and Mr. Chasteen, this was the day before the trial . . . we were in negotiations.  He was listening to the conversation between myself and Mr. Chasteen and that's when he heard the information." (*Id.* at 21-22.)  Ewing

14

himself indicated that "[t]he Prosecutor promised us a 144 agreement . . . this is what he relayed to my attorney and me the day before trial to get us to take the plea." (*Id.* at 27.)   Prior to the imposition of the sentence, Ewing also wanted "to state, on the record," that he was "induced to take this plea by [the prosecuting attorney's] promise of 12 years.  And if that's not what he's standing on today as a man, as his word, that he gave me and my lawyer, then I would like to withdraw my plea today." (*Id.* at 33-34.)

The only evidence Ewing offers to support his contention that *his attorney* misadvised him about his potential sentence exposure are three affidavits attached to his § 2255 motion.  The first affidavit, from Ewing's mother, provides:

> On November 5, 2012[,] my son, Darrell Ewing's defense counsel, Marlon Evans, told me personally that my son would be sentenced to 144 months imprisonment, ran [sic] concurrent, with credited time for being in federal custody, which was an agreement received from the United States attorney of an 144 month recommendation, which is the only reason my son, Darrell Ewing withdrew his motion to remove counsel and decide not to go to trial as he had insisted.[2]

> This information from counsel was relayed to me in the courtroom in the presence of my daughter Tearra Dodson and my son's girlfriend Sharelle Hogan.

---

[2] The Court notes that the docket does not reflect that Ewing filed a motion seeking to remove his trial counsel during the time referenced in Ms. Dodson's affidavit.  Rather, the record shows that Ewing filed a motion for withdrawal of attorney on February 13, 2013, two weeks *after* he filed his notice of appeal.  (ECF No. 269.)  This factual inconsistency renders the affidavit, which already contains hearsay, less than fully credible.

(L. Dodson Aff. attach. to Pet.'s Mot. as App. 1.)  The second affidavit, from Ewing's sister, provides similar assertions.  (T. Dodson Aff. attach. to Pet.'s Mot. as App. 2.)  The third affidavit is that of Ewing himself.  This last affidavit provides: "I was lured into pleading guilty with erroneous information given to me by [counsel], in that he misinformed me that the prosecutor had agreed to a 144 month recommendation, ran [sic] concurrent, with credited time for being in federal custody."  (D. Ewing Aff. attach. to Pet.'s Mot. as App. 3.)

The Court is not persuaded that these affidavits create a factual dispute because the contents are plainly contradicted by the record.  *Arredondo*, 178 F.3d at 682 (indicating that a prisoner's allegations cannot be accepted as true where they are contradicted by the record).  Ewing has provided no explanation for what he now effectively contends were false statements made to the Court during the plea colloquy.  He is thus bound by those statements unless he shows extraordinary circumstances tending to indicate that his answers in open court were untrue and that his plea was unknowing and involuntary as a result of his attorney's allegedly erroneous advice.  *Garnica v. United States*, 361 F. Supp. 2d 724, 736-37 (E.D. Tenn. 2005) (rejecting petitioner's claim that his counsel was ineffective for providing erroneous advice regarding his sentence because petitioner pled guilty following a properly-conducted Rule 11 colloquy and did not present factual support for his contention that his attorney misadvised him as to his sentence

16

exposure). This he cannot do. Based on the record before it, the Court is unable to conclude that Ewing's attorney performed deficiently so as to satisfy the first prong of *Strickland*. The Court need not, therefore, address whether Ewing was prejudiced.

Although Ewing has "offer[ed] more than a mere assertion" that his attorney misled him with regard to his potential sentence, his "factual narrative of the events . . . is . . . contradicted by the record[.]" *Valentine*, 488 F.3d at 334. The assertion that his attorney (as opposed to the Government) promised a 144-month sentence is contradicted by Ewing's statements at the plea colloquy and by his representations at sentencing. Although the affidavits present some evidence to bolster his contention, Ewing's on-the-record statements carry great weight. *Blackledge*, 431 U.S. at 73-74, 97 S. Ct. at 1629 ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."). In short, the Court is not persuaded that Ewing has satisfied his burden of demonstrating that he is entitled to an evidentiary hearing. It necessarily follows that Ewing has not discharged the more demanding burden of showing that he is entitled to relief on this claim.

   **2.**   ***Ineffective Assistance Claim Regarding Custody Credit***

Ewing also claims that his counsel was ineffective because he advised Ewing that he would receive credit towards his federal sentence for the time he spent in federal custody.[3]  As with Ewing's other ineffective assistance claim, he faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral responses given in open court during a Rule 11 colloquy.  *Warner*, 975 F.2d at 1212.

The plea agreement Ewing signed contains no reference at all to custody credit.  At the plea hearing, Ewing indicated that he understood the terms of the plea agreement and that no other agreements existed.  *Ramos*, 170 F.3d at 566 (explaining that failing to hold defendants to their statements would "render[] the plea colloquy meaningless" and "condon[e] the practice by defendants of providing untruthful responses to questions during plea colloquies").  At sentencing, Ewing's counsel advocated for jail credit regarding time-served in federal custody.  In rejecting this request, the Court explained that Ewing was receiving credit on his state sentence and was therefore not eligible to receive time-served on his federal sentence.  The Court also noted that jail-time calculations are within the province of the Bureau of Prisons, not the Court.  (Sent'g Hr. Tr. 17-18.)

---

[3] According to Ewing, he spent nearly ten months in federal custody. During all ten of those months, however, Ewing was (and still is) serving a mandatory life sentence in the Michigan Department of Corrections for murder.

Ewing did not reference the alleged advice regarding custody credit at sentencing and did not raise the issue on appeal.  The Court finds this significant because during Ewing's allocution, he specifically pointed to the alleged promise by the Government to recommend at 144-month sentence as the impetus to his acceptance of the plea agreement.  The same is true of the claims raised on appeal. For these reasons, the Court does not believe Ewing is entitled to either an evidentiary hearing or to relief on his claim that his attorney was ineffective.

## B.    Breach of Plea Agreement Claim

In addition to his ineffective assistance claims, Ewing contends that the Government breached its agreement to recommend a sentence of 144 months.  As mentioned several times herein, there is no evidence in the record that this purported agreement was a product of anything other than Ewing's own subjective beliefs.

"In determining whether a plea agreement has been broken, 'the trial court should look to what the defendant reasonably understood' when he entered into the agreement."  *United States v. Phibbs*, 999 F.2d 1053, 1081 (6th Cir. 1993) (quoting *United States v. Herrera*, 928 F.2d 769, 771 (6th Cir. 1991)).  "The most persuasive evidence of what a defendant reasonably appreciated as his bargain is found in the plain language of the court-approved agreement."  *Id.*  Here, the plain language of the agreement accepted by the Court provided that the Government

agreed to a sentencing range of 144 to 204 months. There is nothing in the language of the agreement supporting Ewing's contention that the Government agreed to recommend a sentence of 144 months.

Further, the plain language of the agreement, which Ewing reviewed with his attorney on more than one occasion and which Ewing indicated he understood, provided that "no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent that they have been explicitly incorporated into this agreement." (Plea Ag. 8.) This language is unmistakably an integration clause. "Once the government enters into a Rule 11 plea agreement containing an integration clause, the result ordinarily should be final and immune from collateral attack, whether such attack occurs before or after sentencing." *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000). This general rule applies in this case.

In short, the plea agreement and the plea hearing appear to conclusively refute Ewing's claim that the Government breached the plea agreement. The agreement accepted by the Court provided that the Court could impose a sentence between 144 and 204 months. Any subsequent recommendation by the Government within that range would not bind the Court. Ewing was sentenced to 180 months and therefore received the benefit of his bargain. Ewing is not entitled to an evidentiary hearing or to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

When a district court enters a final order adverse to a § 2255 movant, it must issue or deny a certificate of appealability.  *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Supreme Court has provided that, to demonstrate entitlement to a certificate of appealability pursuant to § 2255, a movant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. Daniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (internal quotation marks and citation omitted).  "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a) of the Rules Governing Section 2255 Proceedings.

Having denied the three claims presented in Ewing's § 2255 motion on the merits, the Court must make a determination as to whether the issuance of a certificate of appealability is warranted.  While this Court believes that its decision not to grant an evidentiary hearing on any of Ewing's three claims of constitutional error is the correct holding, such holding is at least arguably debatable.  Therefore, the Court will grant Ewing a certificate of appealability as to the question of

21

whether or not the Court should have conducted an evidentiary hearing on any of Ewing's claims but not as to any other issue.

## V.   CONCLUSION AND ORDER

For the reasons stated above, the Court concludes that Ewing is not entitled to the relief he seeks in his § 2255 motion.

Accordingly,

**IT IS ORDERED** that Ewing's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**;

**IT IS FURTHER ORDERED** that Ewing's request for an evidentiary hearing is **DENIED**;

**IT IS FURTHER ORDERED** that Ewing is **GRANTED** a **CERTIFICATE OF APPEALABILITY** on the issue of whether or not the Court should have conducted an evidentiary hearing on any of Ewing's claims but not as to any other issue.

Dated: June 26, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
**Darrell Rashard Ewing**, 623073
CHIPPEWA CORRECTIONAL FACILITY
4269 W. M-80
Kincheloe, MI 49784

**Jeanine Brunson, AUSA**

22

**Linda Aouate, AUSA**
**Margaret M. Smith, AUSA**
**Mark Chasteen, AUSA**